UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KAREN NAINZA SMITH,

      Plaintiff,

v.                                 Case No.  8:10-cv-262-T-17AEP

MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

The Plaintiff in this case seeks judicial review of the denial of her claims for a period of disability and disability insurance benefits.[1]  Because the Commissioner of Social Security based its findings on substantial evidence and employed proper legal standards, the Court recommends that the Commissioner's decision be **AFFIRMED**.

### I.

The Plaintiff applied for disability insurance benefits on July 13, 2006, alleging disability commencing May 3, 1999 (Tr. 39).  After denials at the initial and reconsideration levels, the Plaintiff requested and received a hearing before an administrative law judge ("ALJ"), who issued a decision on July 1, 2009, denying her application (Tr. 14-25).  The Appeals Council

---

[1]  This matter comes before the undersigned pursuant to a Standing Order of this Court. (*See* Dkt. No. 4); *see also* Local Rules 3.05(c)(1)(B) and 6.01(c)(21).

denied the Plaintiff's request for review, thus making the ALJ's decision the final decision of the Commissioner (Tr. 1-4).  The Plaintiff, having exhausted her administrative remedies, thereafter filed this action, seeking review of the Commissioner's decision.  This case is now ripe for review under 42 U.S.C. § 405(g).

The Plaintiff alleged disability due to a cervical neck injury, a back injury, depression, asthma, anxiety, and chronic pain (Tr. 180).  She has a high school education and past relevant work experience as a security officer and a retail store maintenance worker (Tr. 33, 181). The Plaintiff was born on April 22, 1954, and was 54 years old at the time her disability insured status expired on June 30, 2008 (Tr. 14, 166, 176).  After review and evaluation of the medical evidence of record, the ALJ found the Plaintiff is not disabled (Tr. 14-25).  The ALJ determined that the Plaintiff had impairments consisting of a cervical spine disorder with radiculopathy, a lumbar spine disorder, asthma, depression, and anxiety (Tr. 16).  The ALJ determined that while those impairments were "severe," they did not meet the disabling criteria under any impairment listed under 20 C.F.R. pt. 404, subpt. P, app. 1 (listing of impairments) (Tr. 16, 17).  Considering the entire record, including the medical evidence and the Plaintiff's subjective complaints, the ALJ found that the Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of light work as defined in 20 C.F.R. § 404.1567(b)1 (Tr. 18).  Specifically, the ALJ found that through her date of last insured on June 30, 2008, the Plaintiff could:

> [L]ift and carry up to 10 pounds frequently and 20 pounds occasionally, and sit, stand, and /or walk up to 6 hours each out of an 8-hour work day.  However, she cannot perform repetitive or frequent overhead reaching with upper extremities, cannot climb ladders, ropes, or scaffolds, can occasionally climb ramps and stairs, and can occasionally balance, stoop, kneel, crouch, or crawl.  The claimant must avoid dangerous work hazards, such as unprotected heights and

2

exposed machinery, and must avoid concentrated pulmonary irritants.  Further, the claimant is limited to routine, uncomplicated work tasks because of attention and concentration deficits.

(Tr. 18).

The ALJ then determined that the Plaintiff's impairments precluded her from performing any of her past relevant work (Tr. 24).  However, relying on testimony from a vocational expert, the ALJ found that the Plaintiff could perform other work in the economy, considering her age, education, past relevant work experience (including transferable skills), and the RFC she had through her date last insured (Tr. 25, 26, 48-51).  As the Plaintiff could have performed other work in the economy despite her impairments, she was found "not disabled" (Tr. 26).  20 C.F.R. § 404.1520(g).

## II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See id.* § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as

3

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Under the substantial evidence test, "findings of fact made by administrative agencies . . . may be reversed . . . only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*), *cert. denied*, 544 U.S. 1035 (2005). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).[2] Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole,

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

4

contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

### III.

The Plaintiff challenges the ALJ's decision on four grounds:

(1) The ALJ erred in failing to make a proper credibility finding as to the Claimant's testimony, and erred in improperly discrediting the Claimant's complaints of pain and subjective symptoms;

(2) the ALJ failed to accord substantial weight to the findings of the Claimant's treating and examining medical sources, and instead gave significant weight to non-examining reviewers;

(3) the ALJ erred in determining the Claimant's RFC; and

(4) the ALJ improperly determined that the Claimant's impairment did not meet listing 1.04(A) for disorders of the spine.

For the reasons discussed below, the Court finds that the ALJ's findings were based on substantial evidence, and therefore recommends that his decision be affirmed.

**1. The ALJ's Credibility Findings**

The Plaintiff's first challenge is that the ALJ erred in failing to make a proper credibility finding as to the Plaintiff's testimony, and erred in improperly discrediting Plaintiff's complaints of pain and subjective symptoms. (Dkt. No. 20 at 3.)

The Eleventh Circuit has articulated a standard for assessing allegations of pain and other subjective complaints. As the Court of Appeals explained in *Landry v. Heckler*, the pain standard "require[s] evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). This standard also applies to complaints of subjective conditions other than pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ discounts Plaintiff's testimony concerning subjective complaints, he must "articulate explicit and adequate reasons" for doing so. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*quoting Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir.1995)).

In the instant case, the ALJ applied the Eleventh Circuit's pain standard to Plaintiff's subjective complaints by stating that:

> In considering the claimant's symptoms, I must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s) – i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques – that could reasonably be expected to produce the claimant's other pain or other symptoms. Second, once an underlying physical or mental impairment(s) that could reasonably be

6

expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must make a finding on the credibility of the statements based on a consideration of the entire case record.

(Tr. 18.) Applying the pain standard, the ALJ found that Plaintiff met the initial burden of showing the underlying medical conditions that "could reasonably be expected to produce the alleged symptoms," but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 19.) The Plaintiff argues that the "ALJ does not set forth any further explanation or rationale as to find the Claimant's testimony less than fully credible." (Dkt. No. 20 at 4.) To take the Plaintiff's argument at its face, however, would also require overlooking six pages of discussion, which follow the ALJ's RFC assessment, and support the ALJ's credibility findings.

In terms of subjective symptoms and pain, the Plaintiff testified that she experienced "tingling, numbing, shooting [sic] throbbing pain from [her] fingertips all, [sic] the way up to [her] neck...." (Tr. 38.) The Plaintiff claimed that she "could lift a gallon of milk," but could not write more than twenty words with a pen before feeling numbness, pain, and tingling in her fingers. (Tr. 39-40.) In addition, the Plaintiff testified that she "could be eating, and I drop a fork, I drop a knife because I have no sensation at all in, in my fingers and my hand besides

7

pain." (Tr. 40.)  In terms of the Plaintiff's alleged respiratory problems, she stated that her asthma prevents her from working in a "dusty environment that's not clean...." (Tr. 41.)

The ALJ also questioned the Plaintiff on her allegations of depression and anxiety. When asked by the ALJ what her current symptoms of depression were, the Plaintiff responded that she had "no urge to do anything."  (Tr. 43.)  In addition, the Plaintiff testified:

> I'm sad, I, I don't mingle with anyone.  I don't have friends.  I, I don't interact with anyone.  Hours go by and I'm just, just loafing around.  I, I don't have no, no inspiration for anything.... I cry a lot, and a lot of anxiety.  It just, I don't sleep at night.  It's, I'm constantly a worrywart, and I, I get the sweaty spells, and jittery, and I even get startled easily.

(Tr. 44.) When cross-examined by the Plaintiff's attorney on why she could not perform her past work, the Plaintiff stated that, "it's repetitive work, and because of the weight I, I couldn't.  I'd be in extreme pain.  I may not be with the pain immediately as soon as I lift, and then again I might, but it has lingering effects later on, then I'm really hurting." (Tr. 45. ) The Plaintiff also testified that she no longer possessed the requisite level of concentration and attention to detail in order to perform her past work.  (Tr. 45.)  Lastly, the Plaintiff stated that, "I don't feel comfortable with people around me anymore...I'm unstable in...my physical and mental being. I'm just, I can't cope anymore with dealing with people, being among people." (Tr. 45-46.)

In coming to her credibility findings, the ALJ examined a wide array of medical evidence on record.  The ALJ looked at the treatment records of several treating and consultative physicians since 2000.  Specifically, the ALJ examined the treatment records of Dr. George Sidhom, with whom the Plaintiff began treatment for pain management around December 2000, and continued treatment through October 2006. The medical records from Dr. Sidhom indicated

that the Plaintiff "complained of pain, weakness, and numbness in both the upper and lower extremities." (Tr. 19, 508-577.) Dr. Sidhom diagnosed the Plaintiff with "bilateral cervical radiculopathy, a disc protrusion at C5-6, multilevel cervical disc disease, bilateral occipital neuralgia, clinical evidence of bilateral suprascapular nerve entrapment, and myalgia of the left cervical and trapezius muscle." (Tr. 19.) According to the ALJ, the Plaintiff "also indicated there was improvement in her pain and that her overall functional performance was improving." (Tr. 20, 552, 562, 558). In addition, while the Plaintiff's pain assessments during her treatment by Dr. Sidhom were at the highest a 10 out of 10, the Plaintiff reported significantly more pain assessments in the range of 2 to 5 out of 10. (Tr. 508-577.) Dr. Sidhom prescribed a number of different medications at different times over the course of his treatment of the Plaintiff, including Vicodin, Talivin, Klonopin, Robaxin, Methadone, Gabitril, Doxepin, Pamelor, Lortab, Duragesic patch, Darvocet, Trazodone, and Oxycontin. (Tr. 20.)

The ALJ noted that during 2001, Dr. Sidhom "restricted the claimant to full-time light duty with [sic] involving maximum lifting of 15 pounds and not requiring repetitive lifting above her shoulder," and in 2003, Dr. Sidhom modified these limitations to "lifting 20 pounds and adding the restriction of no repetitive bending, no stooping, and no squatting." According to the ALJ, these "restrictions are reflected in the residual functional capacity above," and thus were part of the evidence used in making her credibility findings. On June 11, 2009, Dr. Sidhom filled out a Physical Capacities Evaluation which opined that the Plaintiff was limited to "2 hours sitting, standing, and walking out of an 8-hour day," and that she "could continuously lift up to 10 pounds, frequently lift up to 20 pounds, and occasionally lift up to 50 pounds." (Tr. 21, 674-

699) While the ALJ assigned "some weight" to Dr. Sidhom's opinion regarding lifting capacities, she found "no support in the medical evidence of record, or in Dr. Sidhom's own medical records, for the recent reduction in the claimant's ability to sit, stand, and/or walk 2 hours each out of an 8-hour work day." (Tr. 21.) In light of the other medical opinions and findings as to the claimant's limitations, further discussed *infra*, the Court finds that the ALJ's conclusions regarding Dr. Sidhom's reports are based on substantial evidence. Thus, the Court will defer to the ALJ's findings regarding Dr. Sidhom's medical opinions.

In making her credibility determination, the ALJ looked at a number of medical records to support her findings. In 2000 and 2001, the Plaintiff was examined by Dr. Ronald M. Warncke for a surgical consultation. (Tr. 461-485.) Dr. Warncke opined that the claimant should "return to work," but that she was restricted to "light work." (Tr. 19, 461-485.) In 2006, the Plaintiff was examined by Dr. Stanley Rabinowitz. (Tr. 492-499.) At the examination, the Plaintiff "confirmed being able to shop at the grocery store for a few items and perform activities of daily living," and Dr. Rabinowitz noted that the "claimant walked normally without the aid of an assistive device, she had a negative straight leg raise at 90 degrees while in the sitting position, her grip strength was normal in both hands, she had a negative Romberg test, she had an intact tandem gait, and she had no difficulty getting on and off the examining table." (Tr. 20, 492-499.)

In 2007, Dr. Cristina Rodriguez performed a RFC assessment of the Plaintiff, in which she opined that the Plaintiff could occasionally perform all the posturals, had no manipulative, visual, or communicative limitations, but that she should avoid fumes, odors, dusts, gases, etc.

10

(Tr. 21, 626-633.)   The ALJ gave Dr. Rodriguez's opinion "great weight insofar as it is consistent with the residual functional capacity above."   Lastly, the ALJ found that her RFC assessment was "further supported by the opinions of Dr. Brown and Dr. Dennard" who both opined that the Plaintiff "could perform in a work setting." (Tr. 23.)   Dr. James Brown stated in his functional capacity assessment that the Plaintiff "appears capable of performing unskilled, routine-type jobs," and indicated only moderate limitations in extended concentration, detailed instructions, and responding to criticisms. (Tr. 578-595.)   Dr. Dana Dennard's functional capacity assessment reached similar conclusions. (Tr. 608-625.) The ALJ gave the opinions of Dr. Brown and Dr. Dennard "great weight as they are consistent with the medical evidence of record." (Tr. 23.)

The ALJ discounted several medical reports in coming to her credibility findings.  The ALJ discounted the psychological evaluation of the Plaintiff by Dr. Conrad Weller, which suggested that the Plaintiff had limitations in understanding and memory, because it was "inconsistent with the overall medical evidence of record and my observations from claimant's hearing." (Tr. 22, 651-656.)  In addition, the ALJ also found that the conclusions of John Allocco, Jr., a licensed physical therapist, arising from his May 16, 2009 Functional Capacity Evaluation of the Plaintiff, were "not entitled to any form of controlling weight (20 CFR 404.1513(a) and 416.913(a))." (Tr. 20, 657-668.)  The ALJ noted that Mr. Allocco opined that the "claimant could perform light exertional level work, but could not work an 8-hour day for a 40-hour work week at this level." (Tr. 20.)  However, the ALJ found that "Mr. Allocco is not an acceptable medical source," and his opinion is "not supported by objective medical findings

11

of record regarding the claimant's impairments and limitations." (Tr. 20, 657-668.)  The ALJ

also discounted the opinion of vocational counselor David San Filippo, Ph.D.  (Tr. 22.)  Dr. San

Filippo's June 11, 2009 vocational evaluation summarized opinions regarding the Plaintiff's

limitations by treating and consultative physicians, and concluded that "although her physical

limitations would place the claimant at a sedentary to light physical functional capacity, her

mental issues significantly further narrowed her functional capacity." (Tr. 22, 700-705.)  The

ALJ gave Dr. San Filippo's opinion "very little to no weight because it is inconsistent with other

objective findings of record, and is on [sic] an opinion within the exclusive purview of the

Commissioner." (Tr. 22.)  The Court finds that the ALJ's decision to discount these opinions

in formulating her credibility findings and performing her pain analysis was supported by

substantial evidence, specifically by the reports of Dr. Warncke, Dr. Rabinowitz, Dr. Rodriguez,

Dr. Brown and Dr. Dennard.  *See Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en*

*banc*), *cert. denied*, 544 U.S. 1035 (2005) (noting that " the mere fact that the record may support

a contrary conclusion is not enough to justify a reversal of the administrative findings.").

　　　In making her credibility findings, the ALJ did not completely reject Plaintiff's

subjective complaints; rather, she concluded that the Plaintiff was capable of performing "less

than a full range of light work as defined in 20 CFR 404.1567(b)." (Tr. 18.)  The ALJ found that

the Plaintiff could "lift and carry up to 10 pounds frequently and 20 pounds occasionally, and sit,

stand, and/or walk up to 6 hours each out of an 8-hour work day." (Tr. 18.)  She further

concluded that the "claimant is limited to routine, uncomplicated work tasks because of attention

and concentration deficits." (Tr. 18.)  The ALJ only discounted the Plaintiff's statements

regarding the "persistency, intensity, and limiting effects of her symptoms caused by her physical and mental impairments." (Tr. 23.)  Further, the ALJ found that the "evidence of record does support a finding that the combination of medications, plus symptoms from her mental impairments, moderately limit the claimant's ability to sustain attention and concentration, but not to the point the claimant is precluded from performing routine, uncomplicated works [sic] tasks...[as] accounted for in the residual functional capacity above." (Tr. 24.)  In light of the Plaintiff's examinations by Dr. Warncke (Tr. 19, 461-485), Dr. Rabinowitz (Tr. 492-499),  Dr. Rodriguez (Tr. 21, 626-633), Dr. Brown (Tr. 578-595), and Dr. Dennard (Tr. 608-625), the Court finds that the ALJ's credibility determination is supported by substantial evidence in the record. The Plaintiff has failed to established that the evidence on Record compels a different credibility determination, or that the ALJ erred in his pain analysis.

2. **The ALJ's Evaluation of Treating and Non-Treating Sources**

The Plaintiff claims that the ALJ failed to accord substantial weight to the findings of the Plaintiff's treating and examining medical sources, and instead gave significant weight to non-examining reviewers.  The opinion of a treating physician, "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (*quoting Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997)).  The Eleventh Circuit "has concluded 'good cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*.  "When electing to disregard the opinion of a treating physician, the ALJ must

13

clearly articulate its reasons." *Id.* (internal citations omitted).  Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997).  Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985) (noting that a treating physician's opinion is entitled to more weight than a non-treating physician).

Generally, the key distinction between a treating and non-treating medical examiner is whether or not that medical examiner has had an "ongoing treatment relationship" with the Plaintiff.  *See* 20 C.F.R. § 404.1502 ("Nontreating source means a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you."); *see also Nyberg v. Comm'r of Soc. Sec.*, 179 Fed. Appx. 589, 591 n.3 (11th Cir. 2006) (finding that the doctor at issue was the claimant's treating physician, noting that he had an "ongoing treatment relationship" with the claimant where he treated the claimant on numerous occasions throughout the relevant time period, made notes regarding her condition, and referred her to (and received updates from) various other medical professionals).  The Plaintiff alleges that the ALJ erred by failing to assign substantial weight to the opinions of Dr. Sidhom, John Alloco, Jr., Dr. Weller, and Dr. San Filippo.  (Dkt. No. 20 at 6-7.)  It is clear, based on the evidence on record, that Dr. Sidhom, who has treated the Plaintiff numerous times over the course of six years, is a treating medical examiner under the Act.

14

However, the Court disagrees with the Plaintiff's assertion that John Alloco, Jr., Dr. Weller, and Dr. San Filippo should also be considered treating sources for the purpose of reviewing the ALJ's findings, thus affording their opinions substantial weight as a matter of law.  The Court finds that the single functional capacity evaluation by John Alloco, Jr. is insufficient to demonstrate an "ongoing treatment relationship" with the Plaintiff.  (Tr. 657-668.)  Thus, the Court finds that John Alloco, Jr. is a non-treating source under the Act.  Similarly, the Plaintiff was evaluated by Dr. Weller on only two occasions over the course of three years, both at the request of the Plaintiff's attorney and as part of independent psychological evaluations.  (Tr. 634-656.)  Thus, since the Plaintiff has not shown an "ongoing treatment relationship" between the Plaintiff and Dr. Weller, the Court finds that Dr. Weller is a non-treating source under the Act.  Lastly, the single vocational analysis by Dr. San Filippo is insufficient to show an "ongoing treatment relationship" with the Plaintiff.  (Tr. 700-705.)  The Court finds that Dr. San Filippo is also a non-treating source under the Act.

        With regards to the ALJ's consideration of Dr. Sidhom's opinions, the relevant inquiry for the Court is whether the ALJ articulated "good cause" for discounting Dr. Sidhom's medical assessments concerning the Plaintiff's functional limitations.  In her decision, the ALJ assigned "some weight to Dr. Sidhom's opinion regarding the claimant's ability to lift up to 10  pounds continuously and 20 pounds frequently, and regarding the claimant's postural limitations and overhead activity restrictions, all of which are well documented and supported in the record."  (Tr. 21.)  However, in referring to Dr. Sidhom's June 11, 2009 evaluation, the ALJ found "no support in the medical evidence of record, or in Dr. Sidhom's own medical records, for the recent

15

reduction in the claimant's ability to sit, stand, and/or walk 2 hours each out of an 8-hour work day." (Tr. 21.)  In coming to this conclusion, the ALJ noted that "[o]ther opinions and medical findings as to the claimant's limitations, further discussed below, are consistent with the objective medical evidence and are thus given more weight."  Lastly, the ALJ found that, "Dr. Sidhom's opinion dated June 11, 2009, is given little weight insofar as it is inconsistent with the residual functional capacity above, objective evidence, and his numerous prior treatment notes and findings for the claimant."  (Tr. 21.)  The Court finds that in light of the explanations that the ALJ has articulated for discounting aspects of Dr. Sidhom's treatment records, the ALJ has shown "good cause" for not giving Dr. Sidhom's opinions substantial weight.  The ALJ's analysis of substantial medical evidence that contradicts the medical opinions of not only Dr. Sidhom, but also John Alloco, Jr., Dr. Weller, and Dr. San Filippo, discussed at length *supra*, provides ample support for finding "good cause" in discounting contrary evidence.  Specifically, the ALJ looked at the Plaintiff's examinations by Dr. Warncke (Tr. 19, 461-485), Dr. Rabinowitz (Tr. 492-499),  Dr. Rodriguez (Tr. 21, 626-633), Dr. Brown (Tr. 578-595), and Dr. Dennard (Tr. 608-625).  The Court will not re-evaluate the substance of this medical evidence.  Further, the ALJ did not err in weighing the opinions of the medical sources of record, both treating and non-treating.

### 3. <u>The ALJ's RFC Determination</u>

The Plaintiff claims that the ALJ erred in making her RFC determination since the ALJ failed to include and consider all of the Plaintiff's limitations to their appropriate degree.  (Dkt. No. 20 at 7-9.)  RFC is defined as the most Plaintiff "can still do despite [her] limitations" and

16

is "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a). In determining a claimant's RFC, the ALJ must consider each of the claimant's alleged impairments, including impairments that are not severe. *Id.* §§ 404.1520(e), 404.1545(a)(2). In addition, Social Security Ruling ("SSR") 96-8p, which addresses RFC assessments at steps four and five of the sequential analysis, dictates that the ALJ must consider and address medical source opinions and directs that, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p.[3] Further, the "determination of residual functional capacity is within the authority of the ALJ and the assessment should be based upon all of the relevant evidence of a claimant's remaining ability to do work despite her impairments." *Beech v. Apfel*, 100 F. Supp.2d 1323, 1330 (S.D. Ala. 2000), citing 20 C.F.R. § 404.1546, *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Here, the ALJ's RFC determination states:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform leses than a full range of light work as defined in 20 CFR 404.1567(b). Particularly, the claimant can lift and carry up to 10 pounds frequently and 20 pounds occasionally, and sit, stand, and/or walk up to 6 hours each out of an 8-hour work day. However, she cannot perform repetitive or frequent overhead reaching with upper extremities, cannot climb ladders, ropes, or scaffolds, can occasionally climb ramps and stairs, and can occasionally balance, stoop, kneel, crouch, or crawl. The claimant must avoid concentrated pulmonary irritants. Further, the claimant is limited to routine, uncomplicated work tasks because of attention and concentration deficits.

(Tr. 18.)

---

[3] In this circuit, such rulings are not binding on the court, but are entitled to deference. *See Fair v. Shalala*, 37 F.3d 1466, 1469 (11th Cir. 1994).

The Plaintiff asserts that the ALJ's RFC determination was deficient because it did not include the limitations in Dr. Sidhom's June 11, 2009 assessments, or those expressed by consultative psychiatrist Dr. Weller, physical therapist John Alloco, Jr., or vocational counselor Dr. San Filippo.  (Dkt. No. 20 at 7-9.)  Courts have generally found that an ALJ errs in making an RFC determination where the ALJ's decision does not address all medical opinions and impairments.  In *Spivey v. Apfel*, the court held that the ALJ's RFC determination, which found that the claimant could perform the full range of "sedentary" work, was not based on substantial evidence where the ALJ completely ignored the limitations imposed by the Social Security consultant and failed to consider all the limitations imposed by the claimant's treating physician.  *See Spivey v. Apfel*, 133 F. Supp.2d 1292, 1303 (M.D. Fla. 2001).  Similarly, in *Markell v. Astrue*, the court found that the ALJ erred in assessing the claimant's RFC where he did not expressly address the conclusions of a non-treating, examining doctor.  *See Markell v. Astrue*, Case No. 8:06-cv-1720-T-TBM, 2007 WL4482245 (M.D. Fla. Dec. 19, 2007).  The *Markell* court further explained:

> the regulations dictate that when considering medical opinions, the administration 'will always consider the medical opinions in [the] case record together with the rest of the relevant evidence [received].' 20 C.F.R. §§ 404.1527(b), 416.927(b). Additionally, Social Security Ruling 96-8p, which addresses RFC assessments at steps four and five of the sequential evaluation, dictates that the ALJ must consider and address medical source opinions and directs that, '[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted,' such rulings are not binding on the court but are entitled to deference. *See Fair v. Shalala*, 37 F.3d 1466, 1469 (11th Cir. 1994).

*Markell v. Astrue*, Case No. 8:06-cv-1720-T-TBM, 2007 WL4482245 (M.D. Fla. Dec. 19, 2007).

The present case is distinguishable from both *Spivey* and *Markell*.  Here, the ALJ does not

18

completely ignore medical evidence contrary to her conclusions, nor does she fail to expressly articulate the reasons why such medical evidence was not adopted.  Contrary to the Plaintiff's allegations, the ALJ both referenced and articulated reasons for discounting contrary medical evidence, including the limitations in Dr. Sidhom's June 11, 2009 assessments, the psychiatric opinions of Dr. Weller, the evaluation by John Alloco, Jr., and the vocational assessment by Dr. San Filippo.  Specifically, in coming to her RFC determination, the ALJ relied on the Plaintiff's examinations by Dr. Warncke (Tr. 19, 461-485), Dr. Rabinowitz (Tr. 492-499),  Dr. Rodriguez (Tr. 21, 626-633), Dr. Brown (Tr. 578-595), and Dr. Dennard (Tr. 608-625).  Concerning Dr. Sidhom's June 11, 2009 report, the ALJ found "no support in the medical evidence of record, or in Dr. Sidhom's own medical records, for the recent reduction in the claimant's ability to sit, stand, and/or walk 2 hours each out of an 8-hour work day."  (Tr. 21.)  The ALJ also adequately discounted the psychological evaluation of the Plaintiff by Dr. Conrad Weller, which suggested that the Plaintiff had limitations in understanding and memory, because it was "inconsistent with the overall medical evidence of record and my observations from claimant's hearing."  (Tr. 22, 651-656.) Further, the ALJ sufficiently addressed the evaluation by John Alloco, Jr., finding that "Mr. Allocco is not an acceptable medical source," and his opinion is "not supported by objective medical findings of record regarding the claimant's impairments and limitations."  (Tr. 20, 657-668.)  Lastly, the ALJ discounted the opinion of Dr. San Filippo, providing his report "very little to no weight because it is inconsistent with other objective findings of record...."  (Tr. 22.)

In light of the substantial evidence to support the ALJ's RFC determination, and this Court's determination, *supra*, that the ALJ's credibility findings and pain analysis was supported by substantial evidence and the ALJ's evaluation of treating and non-treating medical sources was properly made, the Court finds that the ALJ did not err in determining the Plaintiff's RFC.

### 4. The ALJ's Determination that the Plaintiff's Impairment Did Not Meet Listing 1.04(A) for Disorders of the Spine

The Plaintiff claims that the ALJ improperly found that her impairment did not meet the requirements of listing 1.04(A) of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525 and 404.1526).  (Dkt. No. 20 at 9-11.)  In *Wilson v. Barnhart*, 284 F.3d 1219 (11th Cir. 2002), the court discussed the listing of impairments:

> The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity.  *See* 20 C.F.R. § 404.1525(a). Part A of the Listing of Impairments contains medical criteria that apply to adults age 18 and over. *See* 20 C.F.R. § 404.1525(b); *see also* 20 C.F.R. § 404, Subpt. P, App. 1. To "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement.  *Id.* 20 C.F.R. § 404.1525(a)-(d). To "equal" a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'  *See* 20 C.F.R. § 404.1526(a). If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment.

*See Id*.  The Supreme Court of the United States held that "[f]or a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria" and that "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891-92, 107 L.Ed.2d 967 (1990).  The

Supreme Court has also stated that a claimant has the burden of producing medical evidence that establishes all of the required medical findings. *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). In reviewing an ALJ's finding as to whether a claimant's impairment meets a listed impairment under the Act, courts consider whether the ALJ's decision is based on substantial evidence. *See Keane ex rel. Parcelles v. Comm'r of Soc. Sec.*, 205 Fed. Appx.748, 750-751 (11th Cir. 2006) (noting that an implied decision may be sufficient where supported by substantial evidence); *see also Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986).

In the present case, the ALJ concluded that the "claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526)." (Tr. 17.) In reaching her conclusion, the ALJ considered "the listings found under section[] 1.00 (Muskoskeletal)..." and concluded that "after reviewing the evidence [] no listing is met or equaled." (Tr. 17.) Listing 1.04(A) states:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> > A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)....

20 C.F.R. § 404.1525.  The Plaintiff claims that a "review of the medical evidence in the exhibits

from Dr. Sidhom and Dr. Rabinowitz reveals that the Claimant clearly meets this listing."  (Dkt.

No. 20 at 10.)  Courts have generally found that if a plaintiff contends that the impairment meets

a listed impairment, the claimant must "present specific medical findings that meet the various

tests listed under the description of the applicable impairment."  *Wilkinson on behalf of*

*Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987).  In *Wilkinson*, the Eleventh Circuit

noted that the claimant must "(1) have a diagnosed condition that is included in the listings and

(2) provide objective medical reports documenting that this condition meets the specific criteria

of the applicable listing and the duration requirement," and that a diagnosis alone is not

sufficient.  *Id*.  Here, Dr. Sidhom stated that the Plaintiff "is known to have...cervical disc

disease" in numerous reports spanning from December 2000 to October 2006.  (Tr. 575, 572,

571, 570, 565, 560, 548, 546, 543, 541, 508-536.)  However, the Court finds that the Plaintiff

failed to meet her burden in providing objective medical reports documenting that this condition

meets *all* of the specific criteria of listing 1.04(A).  *See Sullivan v. Zebley*, 493 U.S. 521, 530,

110 S.Ct. 885, 891-92, 107 L.Ed.2d 967 (1990) ("For a claimant to show that his impairment

matches a listing, it must meet all of the specified medical criteria.").  Notably, while it is unclear

whether Dr. Sidhom is making the diagnosis that the Plaintiff has "cervical disc disease" based

on the language of the report, Dr. Sidhom supplements this finding by stating that the Plaintiff

has  "no associated symptoms."  (Tr. 508-577.)  In addition, while there is mention in Dr.

Sidhom's reports of "cervical radiculopathy" under the same section of problems the Plaintiff

"is known to have," there is no mention in his reports of the other criteria required to establish

22

an impairment under listing 1.04(A). Specifically, there is no mention of "nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)," all of which are required to satisfy listing 1.04(A). (Tr. 508-577.)  To the contrary, Dr. Sidhom's physical examinations of the Plaintiff found that her neck was "supple."  (Tr. 508-577.)

The ALJ also highlighted the medical evaluation by Dr. Rabinowitz, which noted the Plaintiff's "resistant range of motion testing of the lumbar and cervical spine because of pain complaints." (Tr. 20, 492-499.)  However, the ALJ noted that Dr. Rabinowitz found that the claimant "walked normally without the aid of an assistive device, she had a negative straight leg raise at 90 degrees while in the sitting position, her grip strength was normal in both hands, she had a negative Romberg test, she had an intact tandem gait, and she had no difficulty getting on and off the examining table." (Tr. 20, 492-499.)  Thus, the Court agrees with the Commissioner that the "Plaintiff failed to produce medical evidence that she met Listing 1.04(A)...." (Dkt. No. 21 at 16.)  Even though the Plaintiff presented some evidence demonstrating aspects of listing 1.04(A), "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891-92, 107 L.Ed.2d 967 (1990).  Further, in light of the ALJ's thorough analysis of all the medical evidence presented by the Plaintiff, specifically the Plaintiff's examinations by Dr. Warncke (Tr. 19, 461-485), Dr. Rabinowitz (Tr. 492-499), Dr. Rodriguez (Tr. 21, 626-633), Dr. Brown (Tr. 578-595),

and Dr. Dennard (Tr. 608-625) discussed in more detail *supra*, the Court finds that the ALJ's

conclusion that "no listing is met or equaled" (Tr. 17) is supported by substantial evidence.

**IV.**

Accordingly, for the foregoing reasons, it is **RECOMMENDED** that:

(1) the decision of the Commissioner be **AFFIRMED**; and

(2) the Clerk of Court be directed to enter final judgment in favor of the Defendant.

**IT IS SO REPORTED** at Tampa, Florida on this 18th day of February, 2011.


_____

ANTHONY E. PORCELLI
United States Magistrate Judge

## **NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice.  28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*


Copies furnished to:

Hon. Elizabeth A. Kovachevich

Counsel of Record